**STATE of Maine**

v.

**Peter RICCATELLI.**

Supreme Judicial Court of Maine.

May 28, 1976.

David M. Cox, Dist. Atty., Paul W. Chaiken, Asst. Dist. Atty., Bangor, for plaintiff.

Paine, Lynch & Weatherbee by Peter M. Weatherbee, Errol K. Paine, Bangor, for defendant.

DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, and DELAHANTY, JJ.

DELAHANTY, Justice.

On October 1, 1974, Peter Riccatelli was convicted in the Superior Court of grand larceny [1] on his plea of guilty to an indictment charging him with that crime. Judgment was entered, and the defendant was sentenced to the Maine State Prison at Thomaston, which sentence was suspended and the defendant placed on probation for a period of two years. He appeals from the judgment. We dismiss his appeal.

This case comes to us on an agreed statement consisting of (1) an "amended agreed statement of facts"; (2) a copy of the judgment; (3) a copy of the notice of appeal; (4) a statement of points on appeal; (5) the Superior Court docket entries. See M.R.Crim.P. 39(r).

The indictment returned by the Penobscot County Grand Jury charged

That on or about the 15th day of February 1974, in the City of Bangor, County of Penobscot and State of Maine, PETER RICCATELLI did with intent to permanently deprive the owner of it's [sic] property steal, take and carry away one (1) diamond, the property of W. C. Bryant & Sons, Inc., a corporation duly created by law, of the value in excess of Five Hundred Dollars ($500.00).

Riccatelli entered a plea of not guilty to this indictment and the case was continued for trial. The amended agreed statement of facts submitted jointly by the defendant

1. 17 M.R.S.A. § 2101.

and the State summarizes subsequent events as follows:

On the date assigned for trial, October 1, 1974, Appellant's attorney advised the Court and the prosecutor, that there was no corporation known as W. C. Bryant & Sons, Inc. The only corporation in existence was W. C. Bryant & Son, Inc. The prosecution agreed that it could not prove that the property belonged to W. C. Bryant & Sons, Inc. The prosecution moved to amend the indictment to charge that the property belonged to W. C. Bryant & Son, Inc., and the Court allowed the motion.

In light of the Court's ruling, the Appellant· indicated that he would plead guilty, if he was permitted to preserve his objection to the Court's ruling regarding the proof of ownership. The Court and the prosecution agreed that the Defendant would be permitted to preserve his objection and to perfect an appeal with regard to the ownership of the property and the Appellant subsequently plead [sic] guilty and was placed on probation.[2]

The issue which the defendant would have this Court decide is whether the presiding Justice erred · by "permitting the State to amend its indictment changing the name of the owner of the diamond allegedly stolen from W. C. Bryant and Sons, Inc., to W. C. Bryant and Son, Inc." For reasons discussed herein, we find that this question is not properly before us, and dismiss the appeal without reaching the merits of the defendant's argument.

In *State v. Vane*, Me., 322 A.2d 58, 62 (1974), we said,

A defendant who has been convicted upon a plea of guilty is without right to have review of the judgment of conviction by direct appeal except as to the sufficiency of the indictment, the jurisdiction of the court to try him, or the excessive or cruel and unusual nature of the punishment.

See *Dow v. State,* Me., 275 A.2d 815 (1971).

■ The defendant does not challenge the jurisdiction of the court below, or the nature of the punishment which was imposed on him. Nor does he attack the sufficiency of the indictment to which he pleaded guilty. That indictment incorporated the amendment proposed by the State to change the name of the victimized corporation from "W. C. Bryant & Sons, Inc." to "W. C. Bryant & Son, Inc." Riccatelli's contention, as we understand it, is simply that the court should not have granted the motion to amend the indictment. Under the rule enunciated in *Vane*, this argument is not cognizable on a direct appeal from a judgment of conviction entered upon a plea of guilty by the defendant.

There is nothing in the record before us which suggests that the defendant's plea of guilty to the amended indictment was not "made voluntarily with understanding of the nature of the charge." M.R.Crim.P. 11. We must assume that, in deciding to change his plea from not guilty to guilty following the presiding Justice's allowance of the State's motion to amend the indictment, the defendant was aware of his alternatives and weighed them against the course of action which he chose to follow. He could, after all, have maintained his plea of not guilty and sought to have the question as to the amendability of the indictment reported directly to the Law Court. M.R.Crim.P. 37A. Or he could have persisted in his not guilty plea and

2. The Superior Court docket entries contain no indication that the defendant's plea of guilty to the amended indictment was in any way conditional. It was not until the amended agreed statement of facts was filed on February 11, 1975—more than four months after judgment was entered—that the circumstances surrounding the defendant's guilty plea became a matter of record.

put the State to its burden of proving his guilt at trial, with the attendant knowledge that the trial court's overruling of his objection to the amendment of the indictment was preserved for appellate review. If the defendant believed that that there was a reasonable possibility that the Justice's ruling allowing the amendment of the indictment would be reversed on appeal, we are at a loss to understand what the defendant had to gain by pleading guilty.

■ The presiding Justice, however, allowed Riccatelli the best of both worlds. The defendant was apparently permitted to plead guilty with the understanding that he was reserving a right to attack the amendment of the indictment on direct appeal. We can only respond that Maine law does not recognize such a right following a conviction upon a plea of guilty. *Vane,* supra.

A plea of guilty is an "admission in open court that [the defendant] committed the acts charged in the indictment." *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747, 756 (1970). It is "more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711–12, 23 L.Ed.2d 274, 279 (1969). "[A] voluntary and intelligent plea of guilty by an accused is a self-supplied conviction precluding trial of the issue of guilt or innocence and authorizing in and of itself the imposition of the punishment fixed by law." *Dow,* supra, 275 A.2d at 818.

A guilty plea is thus by its very nature unconditional. With the limited exceptions enumerated in *Vane,* supra, a defendant who pleads guilty waives his right to challenge his conviction on direct appeal. We cannot countenance a procedure whereby a defendant is permitted to plead guilty and then appeal his conviction on a ground other than those delineated in *Vane.* We hold that Riccatelli's attempted reservation

of a right to attack the amendment of the indictment on direct appeal following his plea of guilty, even though acquiesced in by the presiding Justice and the State, was ineffective.

The entry must be:

Appeal dismissed.

All Justices concurring.

WEATHERBEE, J., did not sit.